**DEFENDERS OF ANIMALS,
INC., et al.,**

v.

**DEPARTMENT OF ENVIRONMENTAL
MANAGEMENT et al.**

No. 86–170–Appeal.

Supreme Court of Rhode Island.

Feb. 1, 1989.

Stephen J. Fortunato, Robert A. Watson, Providence, for plaintiffs.

Kathleen M. Lanphear, Adrienne G. Southgate, Dept. of Environmental Management, Providence, for defendants.

## OPINION

FAY, Chief Justice.

The Department of Environmental Management (DEM) and other named defendants seek relief from an order permanently enjoining them from "jacklighting" and shooting deer on Block Island. In November 1985 members of DEM's Division of Fish and Wildlife planned to go to the island to obtain twelve deer for the purpose of studying the role of the herd in the spread of Lyme disease to humans. Block Island has no hunting season for deer by a vote of the Town Council of New Shoreham. In order to obtain the deer, the director of DEM issued a collector's permit pursuant to his authority under G.L.1956 (1982 Reenactment) § 20–1–18, which allows him to issue permits for taking wild animals for scientific experimentation. Section 20–1–2 also grants to the director general responsibility over all fish and wildlife in Rhode Island. The DEM proposed to take the deer by shining bright lights into their eyes to immobilize them, a procedure known as jacklighting, and then shooting them. This method was chosen to maximize the chances of inflicting fatal

wounds and to gather the deer expeditiously.

Upon learning of the proposed kill, plaintiffs brought an action in Washington County Superior Court to enjoin the event as violative of G.L.1956 (1982 Reenactment) § 20–15–1(g), as amended by P.L.1984, ch. 417, § 2, which prohibits jacklighting. The plaintiffs are Defenders of Animals, Inc., and certain Block Island residents who own land inhabited by deer. A Superior Court justice issued an order on November 19, 1985, temporarily restraining defendants from killing any deer on Block Island in violation of chapter 15 of title 20. The justice granted a permanent injunction on November 27, 1985, after a full hearing.

In his decision from the bench the justice noted that nowhere in title 20 was the director given the authority to kill wildlife or to violate the prohibitions of § 20–15–1(g), a criminal statute. He found that the proposed kill would violate § 20–15–1(g) and that the director had no authority to authorize such a violation unless he was clearly exempted from the statute. In his final order entered on January 15, 1986, the justice noted again that jacklighting is a misdemeanor punishable by a fine, imprisonment, or both under § 20–15–1. The justice held that the director had no statutory authorization to require DEM employees to violate this criminal statute. The defendants appealed from the Superior Court justice's permanent injunction.

On May 22, 1986, this court granted defendants' motion to hold their appeal in abeyance due to an impending legislative amendment to title 20. On June 24, 1986, the Legislature amended § 20–1–18 to include the language "[n]otwithstanding any other restriction or prohibition set forth in this title." Public Laws 1986, ch. 209, § 1. With the amendatory language, that section now reads that the director of DEM may issue a collector's permit to take wild animals for the purpose of carrying out scientific experiments or for cultivation projects *notwithstanding* any prohibition in title 20.

This court remanded for further consideration. The defendants then filed a motion for relief from the permanent injunction pursuant to Rule 60(b)(6) of the Superior Court Rules of Civil Procedure. Despite the statutory amendment, another trial justice issued an order denying defendants' motion for relief. The justice found that § 20–1–18 as amended contains no language specifically exempting the director of DEM from § 20–15–1(g); therefore, the director is still statutorily prohibited from jacklighting and shooting the deer for any reason. The defendants now appeal to this court, seeking relief from the permanent injunction.

The plaintiffs maintain that the amendment to § 20–1–18 has no effect on the prohibitions of § 20–15–1(g), which forbid jacklighting. The plaintiffs advocate the position of the trial court justice that no statute exists exempting the director from § 20–15–1(g), a penal statute that must be strictly construed. The plaintiffs also argue that if the amendment to § 20–1–18 is read to apply to all of title 20, then the director will have unrestricted discretion and not have to comply with any provision of that title. The plaintiffs submit that this reading would render § 20–15–1 ineffective and could not have been so intended by the Legislature. The plaintiffs also note that such an implied repeal of a prior statute is not favored. *State ex rel Thompson v. Denardo,* 448 A.2d 739, 740 (R.I.1982).

The defendants urge this court to construe § 20–1–18 to mean that the director may issue permits that violate other provisions of title 20. They maintain that § 20–1–18 was amended specifically to alleviate the curtailment of the director's authority that resulted from the Superior Court's January 15, 1986 order. The defendants also view § 20–15–1(g) as a general statute prohibiting the jacklighting of deer. They take the position that the amended § 20–1–18 is a subsequent special act. The defendants point out that when effect cannot be given to both sections simultaneously, this court has held that the special provision must prevail. *Police & Firefighter's Retirement Ass'n. of Prov-*

*idence v. Norberg,* 476 A.2d 1034, 1036 (R.I.1984); *St. Germain v. City of Pawtucket,* 119 R.I. 638, 641, 382 A.2d 180, 181 (1978); G.L.1956 (1988 Reenactment) § 43–3–26. Finally, defendants cite the maxim of statutory construction that the Legislature is presumed to have intended each word of the amendment to have a purpose and an effect. They urge us to construe § 20–1–18 as directly affecting § 20–15–1(g) and authorizing the director's proposed actions regarding the Block Island deer.

■ The only issue before this court is the determination of what the Legislature intended when it amended § 20–1–18, the section authorizing the director of DEM to issue special collector's permits for scientific experiments, and added the words "[n]otwithstanding any other restriction or prohibition set forth in this title." To make this determination, we must look at the circumstances that existed at the time the amendment was passed into law. *Nolan v. Representative Council of Newport,* 73 R.I. 498, 504, 57 A.2d 730, 732 (1948). As both parties point out, we must also presume that the Legislature intended every word of the enactment to have a useful purpose and to have some force and effect. *State v. Reis,* 430 A.2d 749, 752 (R.I.1981); *Providence Journal Co. v. Mason,* 116 R.I. 614, 624, 359 A.2d 682, 687 (1976). We note preliminarily that in environmental regulation, wide latitude is given to state regulatory agencies on the assumption that such latitude is necessary for them to perform their functions of public service properly. 3A *Sutherland Statutory Construction* § 75.06 (Sands 4th ed.1986). In particular this court attributes great weight to an agency's construction of a regulatory statute when the statute's provisions are unclear. *Gallison v. Bristol School Comm.,* 493 A.2d 164, 166 (R.I.1985). We therefore apply the above-mentioned canons of statutory construction with particular emphasis on DEM's position that the Legislature intended the amendment to § 20–1–18 to cure the effects of the Superior Court's injunction. We also presume that the grant by statute of a certain amount of autonomy to this regulatory agency was intended by the Legislature and considered in the public's best interest.

■ Admittedly an explicit exemption of the director from § 20–15–1(g) would have been clearer and would present no ambiguity for this court to resolve. Nevertheless, for whatever reasons, the Legislature chose a different course, and we must interpret the existing language of § 20–1–18. Examining the surrounding circumstances and ascribing meaning to all the words of the amendment, we find it apparent that the Legislature amended § 20–1–18 in order to remedy the effects of the Superior Court's permanent injunction imposed upon DEM's director. The House bill was introduced less than two months after the Superior Court's injunction issued, and the bill was passed into law only three months thereafter. The Legislature is presumed to understand the nature of prior legislation and the effects of any judicial interpretation of that legislation. *First Federal Savings & Loan Ass'n. of Providence v. Langton,* 105 R.I. 236, 245–46, 251 A.2d 170, 176 (1969), *cert. denied,* 396 U.S. 374, 90 S.Ct. 613, 24 L.Ed.2d 589 (1970). Because the Legislature is presumed to know the background of the controversy surrounding the prior § 20–1–18 and to intend each word of the amended statute to have meaning, we can only construe the word "notwithstanding" as giving the director authority to issue collector's permits for scientific purposes in spite of any prohibitions of title 20. Lending further support to this construction, the American Heritage Dictionary defines "notwithstanding" as meaning "regardless of hindrance by." American Heritage Dictionary 898 (1981). In a situation in which a statute does not define a word, courts often apply the common meaning as given by a recognized dictionary. 3A *Sutherland Statutory Construction,* § 75.06; *see also City of Warwick v. Aptt,* 497 A.2d 721, 724 (R.I.1985), and *Roadway Express, Inc. v. Rhode Island Comm'n for Human Rights,* 416 A.2d 673, 674 (R.I.1980) (applying dictionary definitions to construe words of statutes). Reading the amended sentence with this definition makes it clear that

§ 20–15–1(g) does not prohibit the director's actions in this case.

Finally this court will not interpret legislative enactments in a manner that renders them nugatory or that would produce an unreasonable result. *Cocchini v. City of Providence,* 479 A.2d 108, 111 (R.I.1984); *Beaudoin v. Petit,* 122 R.I. 469, 476, 409 A.2d 536, 540 (1979); *Raymond Construction Co. v. Bisbano,* 114 R.I. 1, 6–7, 326 A.2d 858, 861 (1974).

We conclude that the Legislature intended the language "notwithstanding any other restriction or prohibition set forth in this title" to allow the director of DEM to issue collector's permits for scientific purposes, regardless of the restrictions imposed on jacklighting in § 20–15–1(g). Accordingly the defendants' appeal is sustained, the judgment appealed from is reversed, and the papers of the case are remanded to the Superior Court for entry of judgment for the defendants.