NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA,
*Appellee*,

v.

DOLORES MEZA ZAVALA,
*Appellant*.

No. 1 CA-CR 20-0445
FILED 6-17-2021

Appeal from the Superior Court in Yuma County
No.  S1400CR201801355
The Honorable Roger A. Nelson, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michelle L. Hogan
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Robert J. Trebilcock
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge Michael J. Brown joined.

---

**W E I N Z W E I G**, Judge:

**¶1**        Dolores Zavala appeals his convictions and sentences on one count of attempted first-degree murder and two counts of aggravated assault.  Finding no reversible error, we affirm.

### FACTS AND PROCEDURAL BACKGROUND[1]

**¶2**        One morning in November 2018, Zavala visited his girlfriend Kari at her apartment to eat breakfast and smoke methamphetamine.  A shouting match erupted between Zavala and Kari over accusations of infidelity.  A third person, Jennifer, was sleeping in Kari's bedroom until awoken by the fight.  Kari burst into the bedroom, warning Jennifer to leave.  Jennifer watched as Zavala appeared from behind Kari, wrapping his arms around her neck as she begged: "Not here.  She doesn't need to see this."

**¶3**        Jennifer escaped the apartment and ran for help.  A neighbor who heard the commotion, named Tacy, then opened Kari's apartment door, where she saw Zavala swinging a chain at Kari.  That neighbor left, but Jennifer returned with Herman, another neighbor, who barreled through the front door to find Kari on the floor, bloodied and bruised.  Zavala laughed aloud and said: "She's dead.  She's dead already.  You're too late."  In the ensuing struggle, Herman slashed Zavala's face with "something" sharp. Zavala escaped through a back window, bleeding from his face.

**¶4**        Yuma police responded to the scene.  Kari was bleeding from various facial wounds and a stab wound on her ribcage.  She said that Zavala attacked her.  She was rushed to a local hospital and then transported to Phoenix with spinal injuries.  A surgeon confirmed that Kari's neck was broken in three places.

---

[1]        We review and thus recount the facts in the light most favorable to sustaining the jury's verdict.  *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

¶5          A short time later, Yuma police found and detained Zavala, who was bleeding from a large cut "above his eye across his nose and down across his face." Police removed a screwdriver and pocketknife from Zavala's person. Zavala asked for a lawyer and was transported to the same hospital as Kari. The State indicted Zavala on attempted first-degree murder (count 1) and two counts of aggravated assault (counts 2 and 3).

¶6          Several witnesses testified at the three-day jury trial, including Kari, Zavala, Jennifer, Tacy, Herman, two police officers and Kari's surgeon. The jury convicted Zavala on all counts. The court sentenced him to concurrent prison terms of 15.75 years (count 1), 11.25 years (count 2), and 11.25 years (count 3). Zavala appealed. We have jurisdiction. *See* A.R.S. §§ 12-120.21(A)(1), 13-4031, -4033(A)(1).

## DISCUSSION

¶7          Zavala presses two evidentiary errors on appeal. Because defense counsel did not raise either objection at trial, Zavala must show fundamental, prejudicial error. *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018).

### I.     Impeachment

¶8          Zavala first argues the superior court erroneously required his attorney to sanitize Herman's prior felony convictions before they could be used to impeach Herman at trial. Arizona Rule of Evidence 609 provides that a non-defendant witness may be impeached with prior felony convictions over the past ten years if the felonies involved "a dishonest act or false statement" or are admissible under Rule 403. Ariz. R. Evid. 609(a)(1)(A), (a)(2).

¶9          Zavala shows no error. Herman's offenses did not involve dishonesty or false statements. Ariz. R. Evid. 609(a)(2). Nor does the probative value of the felony convictions "substantially outweigh[]" any unfair prejudice. Ariz. R. Evid. 403. The superior court was "best position[ed] to balance the probative value of challenged evidence against its potential for unfair prejudice." *State v. Harrison*, 195 Ariz. 28, 33, ¶ 21 (App. 1998), *aff'd*, 195 Ariz. 1 (1999). And Arizona courts have long "approved of sanitization as a means of limiting prejudicial effect." *State v. Montano*, 204 Ariz. 413, 426, ¶ 66 (2003).

## II.    Due Process

¶10       Zavala next argues the State impermissibly commented on his post-arrest request for counsel and silence, thus violating his due process rights.  We review for fundamental error because Zavala did not object at trial.  *See Escalante*, 245 Ariz. at 140, ¶ 12.  Zavala must show the alleged error is both fundamental and prejudicial.  *Id.* at 142, ¶ 21.

¶11       Zavala points to three statements elicited at trial from two Yuma police officers.  Officer Powell went first, recounting how she responded to Kari's apartment and accompanied her to the hospital.  The prosecutor asked Officer Powell if she saw Zavala at the hospital, which led to the following colloque:

| | |
|---|---|
| Officer Powell: | Yes. |
| Prosecutor: | All right. Please tell us about that. |
| Officer Powell: | Officer Lee arrived shortly on scene after I had already been on scene with Kari []. I was in ER room Number 44, and Officer Lee arrived on scene with Zavala in room Number 41. |
| Prosecutor: | Okay. |
| Officer Powell: | I entered room Number 41. I had not yet contacted Zavala, and I asked Officer Lee if Zavala had said anything on scene because I had not made contact with him yet, and Officer Lee told me he did not. |
| Prosecutor: | Okay. |
| Officer Powell: | That he requested—*he requested a lawyer*. |
| Prosecutor: | Okay. |

¶12       Officer Longoria testified next.  She described how she found Zavala near the apartment.  During a narrative answer to what happened next, Officer Longoria said she overheard Zavala ask for a lawyer:

| | |
|---|---|
| Officer Longoria: | So I hear him tell Officer Lee that "*I want a lawyer*," and no other further--no other questions were asked at that time. |

¶13       Just minutes later, the prosecutor returned to the subject of Zavala's silence:

| Prosecutor: | While you were at [the hospital] did you have an opportunity to talk to the defendant at any point? |
| Officer Longoria: | No. Never spoke to him. |
| Prosecutor: | All right. And did he make any statements to you either there or anywhere else? |
| Officer Longoria: | We asked what--you know, what happened, and *he lawyered up*, so we didn't speak to him anymore. I didn't. |

## A.    Fundamental error

**¶14**      The State twice stumbled into unconstitutional terrain yet returned a third time, volitionally, when the prosecutor asked Officer Longoria whether Zavala made "any statements to" her at the hospital "or anywhere else."  At that point, the prosecutor knew the answer to this question—that Zavala exercised his constitutional rights to remain silent and seek counsel—having just elicited testimony from Officer Powell and Officer Longoria to that effect.

**¶15**      This violated Zavala's due process rights.  A prosecutor violates due process by implying guilt from a defendant's post-arrest silence or request for counsel.  *Doyle v. Ohio*, 426 U.S. 610, 618 (1976) (silence); *State v. VanWinkle*, 229 Ariz. 233, 237, ¶ 15 (2012) (attorney request).  "[T]o be impermissible, the prosecutor's comments must be calculated to direct the jurors' attention to the defendant's exercise of his fifth amendment privilege." *State v. McCutcheon*, 159 Ariz. 44, 45 (1988). Under these circumstances—including the prosecutor's role, the number of comments and their closeness in time—the testimony of Officers Powell and Longoria emphasized Zavala's silence and request for counsel, raising a tacit inference of guilt and depriving Zavala of his constitutional right to remain silent and seek counsel without penalty. *Doyle*, 426 U.S. at 618.  That was fundamental error.  *See Escalante*, 245 Ariz. at 141, ¶19 (depriving defendant of a constitutional right is fundamental error); *State v. Anderson*, 110 Ariz. 238, 241 (1973) (raising an inference of guilt from silence or request for an attorney is fundamental error).

## B.    Prejudice

**¶16**      But Zavala must also show prejudice, which carries a sizable burden of proof that "a reasonable jury could have plausibly and intelligently returned a different verdict" if the improper comments had not been uttered. *Escalante*, 245 Ariz. at 144, ¶ 31.  On this, Zavala fails.  The

jury heard evidence from Jennifer, Kari, Herman and Tacy. Kari testified that Zavala assaulted her and broke her neck. Jennifer testified about how she saw Zavala wrap his hands around Kari's neck from behind. Herman testified that he found Zavala laughing as Zavala stood above Kari's bloodied body. And Tacy described how she saw Zavala swinging a chain at Kari. Because the jury could not have "plausibly and intelligently" reached a not-guilty verdict, with or without the error, we affirm. *Id.*

## CONCLUSION

¶17      Affirmed.

